Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/23/2023 09:07 AM CDT

- 582 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
LINCOLN CTY. BD. OF EQUAL. v. WESTERN TABOR RANCH APTS.
Cite as 314 Neb. 582

Lincoln County Board of Equalization,
appellant, v. Western Tabor Ranch
Apartments, LLC, appellee.
___ N.W.2d ___

Filed June 23, 2023.    Nos. S-22-665 through S-22-667.

1. **Real Estate: Valuation.** The appraisal of real estate is not an exact science and is largely a matter of opinion without a precise yardstick for determination.

2. **Taxation: Real Estate: Valuation.** Generally, a county assessor may determine actual value using (1) the sales comparison approach under Neb. Rev. Stat. § 77-1371 (Reissue 2018), (2) the income approach, (3) the cost approach, or (4) any professionally accepted mass appraisal method.

3. **Taxation: Real Estate: Valuation: Appeal and Error.** Under Neb. Rev. Stat. § 77-1502 (Cum. Supp. 2016 & Reissue 2018), property owners may protest a county assessor's determination of actual value to the county board of equalization.

4. **Taxation: Real Estate: Appeal and Error.** Decisions of the county board of equalization may be appealed to the Tax Equalization and Review Commission.

5. **Taxation: Real Estate: Presumptions: Appeal and Error.** On appeal from the county board of equalization, there is a presumption that a board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action.

6. **Taxation: Real Estate: Evidence: Proof: Appeal and Error.** Once competent evidence is adduced to show that the order, decision, determination, or action of the county board of equalization is incorrect, a property owner retains the burden to show by clear and convincing evidence that the county board's decision was arbitrary or unreasonable.

- 583 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
LINCOLN CTY. BD. OF EQUAL. v. WESTERN TABOR RANCH APTS.
Cite as 314 Neb. 582

7. **Judgments: Words and Phrases.** A decision is arbitrary when it is made in disregard of the facts or circumstances and without some basis which would lead a reasonable person to the same conclusion.

8. **Judgments: Evidence: Words and Phrases.** A decision is unreasonable only if the evidence presented leaves no room for differences of opinion among reasonable minds.

9. **Taxation: Judgments: Appeal and Error.** On appeal from a decision of the Tax Equalization and Review Commission, an appellate court reviews for errors appearing on the record.

10. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

11. **Taxation: Real Estate: Valuation: Legislature.** The Legislature found in Neb. Rev. Stat. § 77-1333(2)(d) (Reissue 2018) that of all the professionally accepted mass appraisal methodologies, which include the sales comparison approach, the income approach, and the cost approach, the utilization of the income-approach methodology results in the most accurate determination of the actual value of rent-restricted housing projects.

12. **Taxation: Real Estate: Valuation: Time.** To facilitate the income-approach calculation under Neb. Rev. Stat. § 77-1333 (Reissue 2018), § 77-1333(5) provides in relevant part that the owner of a rent-restricted housing project shall file a statement electronically on a form prescribed by the Tax Commissioner with the Rent-Restricted Housing Projects Valuation Committee on or before July 1 of each year that details actual income and actual expense data for the prior year.

13. ____: ____: ____: ____. When utilizing the income-approach methodology, nothing in Neb. Rev. Stat. § 77-1333 (Reissue 2018) permits the use of actual income and actual expense data from years other than the prior year as specified in § 77-1333(5).

14. ____: ____: ____: ____. Nowhere in Neb. Rev. Stat. § 77-1333 (Reissue 2018) is it contemplated that a county assessor may use multiple years of data in determining the actual value of property when using the income approach.

15. **Statutes: Legislature: Intent.** In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

16. **Statutes: Words and Phrases.** The general rule is that in the construction of statutes, the word "shall" is considered mandatory and inconsistent with the idea of discretion.

- 584 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
LINCOLN CTY. BD. OF EQUAL. v. WESTERN TABOR RANCH APTS.
Cite as 314 Neb. 582

17. **Taxation: Real Estate: Valuation: Time.** In calculating the actual value of rent-restricted housing projects for each assessment year using the income approach, Neb. Rev. Stat. § 77-1333 (Reissue 2018) requires a county assessor to use income and expense data from the prior year only, which is timely filed as described in subsection (5), and to use no income or expense data from other years.

18. ____: ____: ____: ____. Reusing an income approach valuation from a prior year, calculated in violation of the mandates of Neb. Rev. Stat. § 77-1333 (Reissue 2018), is not a professionally accepted mass appraisal method.

19. **Taxation: Real Estate: Valuation: Appeal and Error.** Under Neb. Rev. Stat. §§ 77-201(1), 77-5007(14), and 77-5016(8) (Reissue 2018), the Tax Equalization and Review Commission has the power and duty to determine on appeal whether the income approach would result in actual value and to substitute whatever method it deems suitable to determine actual value.

20. **Taxation: Valuation: Evidence.** When an independent appraiser using professionally approved methods of mass appraisal certifies that an appraisal was performed according to professional standards, the appraisal is considered competent evidence under Nebraska law.

21. **Appeal and Error.** To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief.

Appeals from the Tax Equalization and Review Commission. Affirmed.

Carly L. Bahramzad and John P. Weis, of O'Neill, Heinrich, Damkroger, Bergmeyer & Shultz, P.C., L.L.O., for appellant.

Stephen B. King, Deputy Lincoln County Attorney, for appellee.

Patrick F. Condon, Lancaster County Attorney, and Daniel J. Zieg for amicus curiae Lancaster County, Nebraska.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Papik, and Freudenberg, JJ., and Lee, District Judge.

- 585 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
LINCOLN CTY. BD. OF EQUAL. v. WESTERN TABOR RANCH APTS.
Cite as 314 Neb. 582

Freudenberg, J.

## I. INTRODUCTION

The Nebraska Tax Equalization and Review Commission (TERC) reversed three decisions of the Lincoln County Board of Equalization (the Board) upholding the assessed value of a rent-restricted housing property for the 2018, 2019, and 2020 tax years. The Board appeals, arguing that Neb. Rev. Stat. § 77-1333 (Reissue 2018) required the county assessor to use the income approach valuation method and that TERC was not allowed to consider a private appraisal to determine the actual value of the property. The property owner responds that TERC correctly determined that the county assessor failed to comply with § 77-1333. We affirm.

## II. BACKGROUND

In 2017, Western Tabor Ranch Apartments, LLC (Western Tabor), acquired a 49-unit apartment complex in North Platte, Lincoln County, Nebraska, for $1,340,000. Under a land use restriction agreement with the Nebraska Investment Finance Authority, the property was subject to rent restrictions under the Internal Revenue Code[1] until 2046. Before Western Tabor acquired the property, a private appraisal determined the leased fee interest in the property to have a market value of $1,350,600, excluding $29,400 in personal property.

For the 2018 tax year, the Lincoln County assessor's office (County Assessor) attempted to appraise the property using the income approach, as contemplated by § 77-1333. The County Assessor received two different income and expense reports for the property for 2016 that resulted in significantly different valuations under the income-approach calculation. Using the data from the first report, the County Assessor valued the property at $1,040,800. Using the data from the second report, the County Assessor valued the property at $1,546,500. The County Assessor determined that the

_____

[1] See I.R.C. § 42 (2018).

- 586 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
LINCOLN CTY. BD. OF EQUAL. v. WESTERN TABOR RANCH APTS.
Cite as 314 Neb. 582

second report more closely matched the data provided for previous years and the data used in the 2017 appraisal. However, the County Assessor's practice for all rent-restricted properties was to average the last three available income and expense reports from the 3 prior tax years. The County Assessor used the average from the first 2016 report and the income and expense data from 2014 and 2015 and determined the fee simple interest in the property to have a market value of $1,519,000.

For the 2019 and 2020 tax years, Western Tabor did not submit the required income and expense reports, so the County Assessor determined that any valuation method could be used. Nevertheless, the County Assessor carried over the income-approach calculation from 2018, resulting in the same valuation of $1,519,000 for 2019 and 2020.

Western Tabor protested the 2018, 2019, and 2020 valuations. The Board affirmed the County Assessor's valuation of $1,519,000 for each year.

Western Tabor appealed the Board's 2018, 2019 and 2020 decisions to TERC. At a hearing, the owner of Western Tabor testified that he was unaware the property was rent restricted and subject to § 77-1333. He argued that the $1,340,000 purchase price and the $1,350,600 private valuation were evidence that the property's actual value was lower than the county's $1,519,000 assessment. He also testified about a larger rental property in North Platte that was valued at about 50 percent less per rental unit.

The Lincoln County lead appraiser testified to not having had enough information to determine which 2016 income report to use in the 2018 income-approach calculation but that she now believed the second report should have been used instead of the first report. She testified that the County Assessor stopped using an average of 3 years' income and expense reports in 2019 and that using the single-year data from the second 2016 report would have resulted in a higher income-approach valuation of $1,546,500.

- 587 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
LINCOLN CTY. BD. OF EQUAL. v. WESTERN TABOR RANCH APTS.
Cite as 314 Neb. 582

TERC determined that the 2017 appraisal rebutted the presumption that the Board acted upon sufficient competent evidence to justify its action and satisfied Western Tabor's burden to demonstrate by clear and convincing evidence that the Board's decision was arbitrary or unreasonable. TERC reasoned that § 77-1333 does not change the overall requirement that all non-agricultural real property be valued at its full market value, and there was nothing in the record to show that the County Assessor verified that its valuation was the actual fair market value. TERC also determined that the County Assessor failed to use any of the statutory methods of valuation in Neb. Rev. Stat. § 77-112 (Reissue 2018) when carrying over the 2018 valuation for tax years 2019 and 2020; it concluded there was clear and convincing evidence that the Board's decisions for those years were arbitrary and unreasonable. TERC reversed the decisions of the Board and accepted the 2017 appraisal's valuation of $1,350,600 for tax years 2018, 2019, and 2020.

### III. ASSIGNMENTS OF ERROR

The Board assigns that TERC erred in not finding for the Board and in failing to follow § 77-1333 when it considered and accepted the valuation provided in the 2017 appraisal.

### IV. STANDARD OF REVIEW

Appellate courts review decisions rendered by TERC for errors appearing on the record.[2]

When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3]

---

[2] *Betty L. Green Living Trust v. Morrill Cty. Bd. of Equal.*, 299 Neb. 933, 911 N.W.2d 551 (2018).

[3] *Id.*

- 588 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
LINCOLN CTY. BD. OF EQUAL. v. WESTERN TABOR RANCH APTS.
Cite as 314 Neb. 582

Questions of law arising during appellate review of TERC's decisions are reviewed de novo on the record.[4]

Whether an agency decision conforms to the law is by definition a question of law.[5]

## V. ANALYSIS

The Board argues that TERC erred in determining that its decision to uphold the County Assessor's valuation of the property was arbitrary and unreasonable. The Board claims that § 77-1333 required TERC to use the income approach to calculate actual value and that TERC was not permitted to consider the 2017 private valuation as evidence of the property's actual value. We hold that TERC correctly determined the property's assessed value was arbitrary and unreasonable for each year. We also hold that TERC was permitted to consider all evidence of actual value on appeal and was not limited to the income approach.

### 1. General Actual Value Framework for Appraisals

[1,2] Although we have recognized that the appraisal of real estate "is not an exact science"[6] and "is largely a matter of opinion without a precise yardstick for determination,"[7] our statutes provide a framework for assessing real property and appealing those assessments. With exceptions for agricultural and horticultural land, Neb. Rev. Stat. § 77-201(1) (Reissue 2018) states that all real property "shall be valued at its actual value." Section 77-112 defines actual value as "the market value of real property in the ordinary course of

---

[4] *Id.*

[5] *Id.*

[6] *Overbeck v. Estate of Bock*, 198 Neb. 121, 124, 251 N.W.2d 872, 874 (1977).

[7] *Cain v. Custer Cty. Bd. of Equal.*, 298 Neb. 834, 851, 906 N.W.2d 285, 298 (2018).

- 589 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
LINCOLN CTY. BD. OF EQUAL. v. WESTERN TABOR RANCH APTS.
Cite as 314 Neb. 582

trade." Generally, a county assessor may determine actual value using (1) the sales comparison approach under Neb. Rev. Stat. § 77-1371 (Reissue 2018), (2) the income approach, (3) the cost approach, or (4) any "professionally accepted mass appraisal method[]."[8]

## 2. Protests and Appeals
### of Appraisals

[3-5] Property owners may protest a county assessor's determination of actual value under these methods to the county board of equalization.[9] The county board of equalization's decision may then be appealed to TERC.[10] On appeal, there is a presumption in favor of the county board of equalization.[11] Section 77-5016(9) states:

> In all appeals, excepting those arising under section 77-1606, if the appellant presents no evidence to show that the order, decision, determination, or action appealed from is incorrect, the commission shall deny the appeal. If the appellant presents any evidence to show that the order, decision, determination, or action appealed from is incorrect, such order, decision, determination, or action shall be affirmed unless evidence is adduced establishing that the order, decision, determination, or action was unreasonable or arbitrary.

We have interpreted this language to create "a presumption that a board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action."[12] The

---

[8] § 77-112.

[9] Neb. Rev. Stat. § 77-1502 (Cum. Supp. 2016 & Reissue 2018).

[10] Neb. Rev. Stat. § 77-1504 (Reissue 2018).

[11] See, Neb. Rev. Stat. § 77-5016(9) (Reissue 2018); *JQH La Vista Conf. Ctr. v. Sarpy Cty. Bd. of Equal.*, 285 Neb. 120, 825 N.W.2d 447 (2013).

[12] *JQH La Vista Conf. Ctr., supra* note 11, 285 Neb. at 124, 825 N.W.2d at 451 (internal quotation marks omitted).

- 590 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
LINCOLN CTY. BD. OF EQUAL. v. WESTERN TABOR RANCH APTS.
Cite as 314 Neb. 582

presumption disappears "when there is competent evidence adduced on appeal to the contrary."[13]

[6-8] Once competent evidence is adduced to show that the order, decision, determination, or action appealed from is incorrect, the property owner retains the burden to show by clear and convincing evidence that the county board's decision was arbitrary or unreasonable.[14] A decision is arbitrary when it is made in disregard of the facts or circumstances and without some basis which would lead a reasonable person to the same conclusion.[15] A decision is unreasonable "'only if the evidence presented leaves no room for differences of opinion among reasonable minds.'"[16]

[9,10] On appeal from TERC's decision, we review for errors appearing on the record.[17] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[18]

### 3. Income Approach for Rent-Restricted Housing

[11] Because this case involves a rent-restricted housing project, it is specifically governed by § 77-1333. The Legislature found in subsection (2)(d) of § 77-1333 that "[o]f all the professionally accepted mass appraisal methodologies, which include the sales comparison approach, the income

---

[13] *Id.* (internal quotation marks omitted).

[14] See *Brenner v. Banner Cty. Bd. of Equal.*, 276 Neb. 275, 753 N.W.2d 802 (2008).

[15] *Bethesda Found. v. Buffalo Cty. Bd. of Equal.*, 263 Neb. 454, 640 N.W.2d 398 (2002).

[16] *Pittman v. Sarpy Cty. Bd. of Equal.*, 258 Neb. 390, 402, 603 N.W.2d 447, 456 (1999).

[17] See *Betty L. Green Living Trust, supra* note 2.

[18] *Id.*

- 591 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
LINCOLN CTY. BD. OF EQUAL. v. WESTERN TABOR RANCH APTS.
Cite as 314 Neb. 582

approach, and the cost approach, the utilization of the income-approach methodology results in the most accurate determination of the actual value of such projects." Accordingly, subsection (3) of § 77-1333 requires that "[e]xcept as otherwise provided in this section, the county assessor shall utilize an income-approach calculation to determine the actual value of a rent-restricted housing project when determining the assessed valuation to place on the property for each assessment year."

[12] To facilitate this income-approach calculation, § 77-1333(5) provides in relevant part that "[t]he owner of a rent-restricted housing project shall file a statement electronically on a form prescribed by the Tax Commissioner with the Rent-Restricted Housing Projects Valuation Committee on or before July 1 of each year that details actual income and actual expense data for the prior year . . . ." And subsection (8) states that "[e]xcept as provided in subsections (9) through (11) of this section, each county assessor shall use . . . the actual income and expense data filed by owners of rent-restricted housing projects under subsection (5) of this section in the county assessor's income-approach calculation."

The exception set forth in § 77-1333(9) allows a county assessor to use "any method for determining actual value . . . that is consistent with professionally accepted mass appraisal methods described in section 77-112," if the owner fails to timely file, in accordance with subsection (5), the statement of actual income and actual expense data on or before July 1 of each year. The exception found in § 77-1333(10) provides a procedure for circumstances where "a county assessor, based on the facts and circumstances, believes that the income-approach calculation does not result in a valuation of a rent-restricted housing project at actual value." This procedure involves petitioning TERC "to consider the county assessor's utilization of another professionally accepted mass

- 592 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
314 NEBRASKA REPORTS
LINCOLN CTY. BD. OF EQUAL. v. WESTERN TABOR RANCH APTS.
Cite as 314 Neb. 582

appraisal technique."[19] Section 77-1333(11) provides for a similar procedure for TERC to consider adjusting the capitalization rate set annually by the Rent-Restricted Housing Projects Valuation Committee, which rate is also part of the income-approach calculation.

[13,14] Thus, § 77-1333(9) through (11) contemplate scenarios where the capitalization rate should be adjusted or where, because of unique circumstances, the income-approach methodology will not result in the most accurate determination of actual value of the rent-restricted project. But when utilizing the income-approach methodology, nothing in § 77-1333 permits the use of actual income and actual expense data from years other than the prior year as specified in subsection (5). Nowhere in § 77-1333 is it contemplated that a county assessor may use multiple years of data in determining the actual value of property when using the income approach. Instead, under § 77-1333(8), when the exceptions of subsections (9) through (11) do not apply, "each county assessor *shall* use . . . the actual income and actual expense data filed by owners of rent-restricted housing projects under subsection (5) of this section in the county assessor's income-approach calculation." (Emphasis supplied.)

[15-17] In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[20] The general rule is that in the construction of statutes, the word "shall" is considered mandatory and inconsistent with the idea of discretion.[21] It is particularly so considered when the statute is addressed to

---

[19] § 77-1333(10).

[20] *Steffen v. Progressive Northern Ins. Co.*, 276 Neb. 378, 754 N.W.2d 730 (2008).

[21] *State ex rel. Shepherd v. Neb. Equal Opp. Comm.*, 251 Neb. 517, 557 N.W.2d 684 (1997).

- 593 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
LINCOLN CTY. BD. OF EQUAL. v. WESTERN TABOR RANCH APTS.
Cite as 314 Neb. 582

public officials.[22] Reading § 77-1333 in its entirety, we conclude that in calculating the actual value of rent-restricted housing projects for each assessment year using the income approach, § 77-1333 requires a county assessor to use income and expense data from the prior year only, which is timely filed as described in subsection (5), and to use no income or expense data from other years.

### 4. TERC's Determination That Board's Decision Was Arbitrary and Unreasonable

#### (a) 2018 Valuation

TERC correctly determined that the Board's decision to uphold the County Assessor's 2018 valuation of the property was arbitrary and unreasonable. For a valuation as of January 1, 2018, an income and expense report was required by July 1, 2017, for the previous year, 2016. Two reports showing actual income and actual expense data were timely provided. Therefore, the exception set forth by § 77-1333(9) was not at issue. Neither was the exception set forth in § 77-1333(10) applicable, as TERC was not petitioned for permission to use a valuation methodology different from the income approach. The income and expense data from 2016, then, was the only data permitted by statute to be used in the income approach calculation. The County Assessor improperly used 3 years of income and expense data when assessing the property for 2018.

The Board points out that two conflicting reports were submitted for 2016, which complicated the County Assessor's determination of the actual income and actual expenses for 2016. Nevertheless, this did not permit the County Assessor, in determining the valuation of the property for the 2018 assessment year, to deviate from the mandate of the statute that it utilize the actual income and actual expense data from

---

[22] *Id.*

- 594 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
LINCOLN CTY. BD. OF EQUAL. v. WESTERN TABOR RANCH APTS.
Cite as 314 Neb. 582

2016 to determine actual value under the income-approach methodology. Section 77-1333 did not allow the County Assessor to average the 2016 data with data from 2015 and 2014 when calculating the actual value of the property using the income approach. If the two data sets caused the County Assessor to doubt the accuracy of the income-approach valuation, it should have petitioned to use a different valuation method under § 77-1333(10) rather than substituting its own modified income approach.

### (b) 2019 and 2020 Assessments

TERC also correctly determined that the Board's decision to uphold the County Assessor's valuations for 2019 and 2020 was arbitrary and unreasonable. Section 77-1333(9) allows a county assessor to use "any method for determining actual value . . . that is consistent with professionally accepted mass appraisal methods described in section 77-112" when the owner fails to timely file the statement of actual income and actual expense data for the prior year. It is undisputed that there were no actual income and actual expense reports for the years prior to the 2019 and 2020 assessment years. However, there is no evidence that the County Assessor determined the actual value of the property for 2019 and 2020 based on any method that is consistent with professionally accepted mass appraisal methods described in § 77-112.

[18] We reject the Board's argument that because no actual income and actual expense reports were filed for the 2019 and 2020 assessments, the County Assessor was free to carry over the 2018 valuation that the County Assessor was required to calculate under the income approach. Carrying over the income-approach calculation from 2018 only compounded the violation of § 77-1333. It would be nonsensical to conclude that reusing an income-approach valuation from a prior year, calculated in violation of the mandates of § 77-1333, is an otherwise "professionally accepted mass appraisal method" as contemplated in subsection (9).

- 595 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
LINCOLN CTY. BD. OF EQUAL. v. WESTERN TABOR RANCH APTS.
Cite as 314 Neb. 582

### 5. TERC's Assessment on Appeal

Having decided TERC did not err in finding the Board's decision to uphold the 2018, 2019, and 2020 valuations was arbitrary and unreasonable, we turn to the Board's assertion that TERC erred in its independent determination of the taxable value of the property for those assessment years. The Board argues that in determining on appeal the actual value of the property, TERC was limited to the income approach and could not consider the 2017 private valuation as evidence of the actual value of the property. We disagree.

[19] Section 77-5016(8) authorizes TERC to "consider all questions necessary to determine taxable value of property as it hears an appeal," regardless of whether the question was raised below.[23] Neb. Rev. Stat. § 77-5007 (Reissue 2018) grants TERC the "power and duty to hear and determine appeals of . . . (14) . . . the requirement under [§ 77-1333] that an income-approach calculation be used by county assessors to value rent-restricted housing projects." We read these statutes together with § 77-201(1) to grant TERC the power and duty to determine on appeal whether the income approach would result in actual value and to substitute whatever method TERC deems suitable to determine actual value.

[20] Given the conflicting income reports and the difficulty in determining which was most accurate, it was reasonable for TERC to conclude that the income approach would not result in actual value. Additionally, we have held that when an independent appraiser using professionally approved methods of mass appraisal certifies that an appraisal was performed according to professional standards, the appraisal is considered competent evidence under Nebraska law.[24] Thus, TERC was free to consider the 2017 valuation as evidence

---

[23] See, *Upper Republican NRD v. Dundy Cty. Bd. of Equal.*, 300 Neb. 256, 912 N.W.2d 796 (2018); *Brenner, supra* note 14.

[24] See, *JQH La Vista Conf. Ctr., supra* note 11; *US Ecology v. Boyd Cty. Bd. of Equal.*, 256 Neb. 7, 588 N.W.2d 575 (1999).

- 596 -

Nebraska Supreme Court Advance Sheets
314 Nebraska Reports
LINCOLN CTY. BD. OF EQUAL. v. WESTERN TABOR RANCH APTS.
Cite as 314 Neb. 582

of the property's actual value in 2018. And although TERC ultimately adopted the 2017 valuation, it also considered the sale price, which is also competent evidence of actual value.[25] Given the similarity between the sale price, $1,340,000, and the private valuation, $1,350,600, accepting the private valuation as the actual value of the property in 2018 was supported by competent evidence and was neither arbitrary, capricious, nor unreasonable. Thus, TERC did not err on the record in calculating the actual value of the property.

[21] The Board does not argue that TERC erred in carrying over its 2018 assessment as the actual value of the property for the 2019 and 2020 assessments. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief.[26] We do not address whether TERC erred in adopting the appraised value from the 2017 valuation as the actual value of the property in 2019 and 2020.

## VI. CONCLUSION

We affirm TERC's determination that the assessed value of the property for 2018, 2019, and 2020 was arbitrary and unreasonable and affirm its determination, on appeal, of the actual value of the property.

Affirmed.

Funke, J., not participating.

---

[25] See *In re Estate of Craven*, 281 Neb. 122, 794 N.W.2d 406 (2011).

[26] *State v. Denton*, 307 Neb. 400, 949 N.W.2d 344 (2020).